IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 2:22-cr-151 |
| v. | ) | |
| | ) | |
| DERRICK RAYMON SILVER, | ) | |
| Defendant. | ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney, and Sherrie S. Capotosto, Assistant United States Attorney, hereby submits this Position of the United States with Respect to Sentencing Factors in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guideline sentencing. The government hereby represents that it has reviewed the Presentence Report ("PSR") prepared July 28, 2023, and the Addendum filed on April 24, 2024, and does not dispute any of the facts or Guideline factors contained therein. For the reasons set forth in greater detail below and in conjunction with other filings, the United States recommends that the Court impose a variance sentence of 48 months.

I. MOTION FOR ADDITIONAL POINT FOR ACCEPTANCE

The United States moves this Court, pursuant to U.S.S.G. §3E1.1(b), to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

II. LEGAL STANDARD AT SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines advisory, but emphasized that a sentencing court must consider both the Guidelines and

the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564.

Further, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence considering all of the relevant factors. *Id.* at 596-97. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by

2

the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

In determining the sentence to impose within the guidelines, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law. U.S.S.G. §1B1.4, 18 U.S.C. § 3661; *United States v. Vitrano*, 495 F.3d 387 (7th Cir. 2007) (noting that under 18 U.S.C. § 3661, court may rely on information that is not included in "relevant conduct" under guideline §1B1.3.), 21 U.S.C. § 850 (same language as § 3661.).

Importantly, the Supreme Court has recognized that a party's argument for a sentence outside the calculated guideline range may "take either of two forms." *Rita v. United States,* 551 U.S. 338, 344, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). A party may "argue within the Guidelines' framework, for a departure," *Id*. (emphasis in original), or a party may "argue that independent of the Guidelines, application of the factors set forth in 18 U.S.C. § 3553(a) warrants a [different variant] sentence." *Id*. *See*, *United States v. Blue*, 877 F.3d 513, 517-18 (4th Cir. 2017) (after calculating the guidelines, each side may argue for whatever sentence they deem appropriate and the Court "consider[s] those arguments in light of all of the factors stated in 18 U.S.C. § 3553(a).).

III.  ANALYSIS OF FACTORS UNDER 18 U.S.C. § 3553(a)

After ruling on the objections, if any, and determining the advisory guideline range, the Court then looks to the 18 U.S.C. § 3553(a) when imposing a sentence.  The Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to promote the goals of sentencing (reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment, affording adequate deterrence, protect the public from the defendant and his needs for treatment and training), (3) the kinds of sentences available, (4) the sentencing guideline range established, (5) any pertinent policy

statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victims of the offense.

    A.    <u>The nature and circumstances of the offense</u>.

On April 4, 2023, the defendant pled guilty to one count of Making a Materially False Statement during the Purchase of a Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). As detailed in the Offense Conduct section of the PSR, between January and April of 2018, the defendant straw-purchased eleven firearms on seven occasions for co-defendant Antonio Jefferson. PSR ¶ 5. The defendant was addicted to opioids at the time he made the straw purchases. *Id*. For each event, Jefferson paid the defendant approximately $20-30 in cash or the equivalent amount of Percocet pills for each transaction, then trafficked the firearms in Baltimore, Maryland. PSR ¶ 10. The defendant was aware that Jefferson intended to re-sell the firearms, but he did not participate in that activity, nor did he share in any of the proceeds. *Id*. One of the firearms straw-purchased by the defendant on April 11, 2018, had a high-capacity magazine capable of holding 30 rounds of ammunition. PSR ¶ 8. In addition, four of the straw-purchased firearms were recovered in Baltimore, Maryland, and one was recovered in New Jersey.

The nature and circumstances of the case are very serious. Interstate trafficking of firearms poses a significant threat to those communities where the illegal firearms are bought, sold, and used to commit violent crime. The number of firearms is also significant – this was not simply a one-time event, but rather an organized and lengthy scheme to purchase multiple firearms (one with a high-capacity magazine) and sell them out of state. Granted, the defendant was a smaller cog in the conspiracy, and did not personally profit from the enterprise, other than the drugs and $20-$30 he received from his codefendant. But the danger posed to these communities cannot be understated.

      B.    <u>History and characteristics of the defendant</u>.

The defendant, who is 37 years old, has a litany of misdemeanors convictions dating back 18 years to his first conviction in 2006 (at age 19). PSR ¶ 31. His record includes four convictions for Failure to Appear, four convictions for Obstruction/Contempt of Court, six convictions for Driving on a Suspended License and one Reckless Driving conviction. PSR ¶¶ 31-43. He received his first felony conviction for two counts of Distribution of Heroin/Fentanyl at age 32 in 2019. PSR ¶ 44.

The defendant was born and raised in downtown Suffolk with a relatively stable homelife despite being poor. His parents were together when he and his siblings were born and eventually got married when he was in elementary school, but divorced when he was a teenager. PSR ¶¶ 53-55. His mother remarried later and the defendant enjoys a good relationship with his step-father. PSR ¶ 59. Both of his parents (and step-father) are gainfully employed. *Id*.

The defendant first used Percocet for a toothache in 2012, and soon became addicted. PSR ¶ 58, 73. After being released from prison for the 2019 drug charges noted above, the defendant successfully navigated two years of supervised probation without any compliance issues or violation reports during 2021-2022. PSR ¶ 44. In March of 2022, the defendant voluntarily entered a three-week in-patient drug treatment program at a detox facility in Franklin, Virginia, and has remained drug-free since then. PSR ¶ 76. During 2022, he was gainfully employed as a janitor and maintenance worker at South-Eastern Virginia Health Systems, living at home with his wife of eleven years and their teenage children. See Pretrial Services Bond Report, ECF 11. His mother lives next door to the family. *Id*. Finally, the defendant would definitely benefit from obtaining a GED and other higher educational/vocational training while incarcerated, as well as supplementary drug abuse treatment and mental health counseling.

  C. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct</u>.

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow. Accordingly, the United States submits that its recommended sentence is one that will deter those who engage in similar conduct.

As for specific deterrence, given the defendant's criminal conduct, the United States' recommended sentence is also needed to achieve specific deterrence. The defendant has received chances to stop his criminal behavior, and in fact, has made demonstrable progress in fighting his drug addiction, which in turn, will help deter him from further criminal conduct. However, it would appear that some of the previous misdemeanor sentences he received were not sufficiently lengthy enough to achieve specific deterrence for this defendant, or to protect the public from further crimes.

  D. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment</u>.

The defendant's current guideline range, as correctly calculated by the Probation Officer, is 108-120 months (roughly 9 to 10 years) based on Level 29 with Criminal History Category III. For the reasons outlined herein and in other filings, and after consideration of the PSR, the relevant conduct associated with this crime, the defendant's history and characteristics, and the defendant's criminal record, the United States respectfully submits that a sentence of no more than 48 months (4 years) is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

A sentence of 48 months would reflect the seriousness of this offense, promote respect for the law, provide just punishment for the offense, and deter further criminal conduct by both the defendant and others. *See* 18 U.S.C. §§ 3553(a)(2)(A), (B) and (C).

## IV. CONCLUSION

The United States respectfully submits that a sentence of 48 months is appropriate under the facts of this case and provides a punishment sufficient but not greater than necessary to achieve the goals of 18 U.S.C. §3553(a).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:           /s/
Sherrie S. Capotosto
Assistant United States Attorney
Virginia State Bar No. 33127
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-6331  / Fax: (757) 441-6689
Sherrie.Capotosto@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of May 2024, I caused a true and correct copy of the foregoing Position on Sentencing to be e-mailed to: Senior United States Probation Officer Joshua A. Coleman, 600 Granby Street, Suite 200, Norfolk, Virginia 23510, and I electronically filed the foregoing Position on Sentencing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

          /s/
Sherrie S. Capotosto
Assistant United States Attorney
Virginia State Bar No. 33127
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-6331
Fax: (757) 441-6689
Sherrie.Capotosto@usdoj.gov